UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NATHANIEL REESE,

Plaintiff,

v.

C. PFIEFFER, *et al.*,

Defendants.

Case No. 1:24-cv-00400-CDB (PC)

FIRST SCREENING ORDER REQUIRING RESPONSE FROM PLAINTIFF

(Doc. 1)

**21-DAY DEADLINE**

Plaintiff Nathaniel Reese is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action brought under 42 U.S.C. § 1983. Plaintiff initiated this action with the filing of a complaint on April 4, 2024. (Doc. 1). Plaintiff asserts claims for violations of his rights under the Eighth and Fourteenth Amendment against Defendants Kern Valley State Prison ("KVSP") and KVSP Warden C. Pfieffer ("Warden") (collectively, "Defendants") when he was assaulted by an inmate that prison staff knew was dangerous and should not have been celled with him. (*Id.*).

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner raises claims that are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii); 28

U.S.C. § 1915A(b). The Court must dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *O'Neal v. Price*, 531 F.3d 1146, 1151 (9th Cir. 2008) (citing *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006)).

## II. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The statement must give the defendant fair notice of the plaintiff's claims and the grounds supporting the claims. *Id.* at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" (*Id.* (quoting *Twombly*, 550 U.S. at 570)). Plausibility does not require probability, but it requires more than the "sheer possibility" of a defendant's liability. (*Id.* (quoting *Twombly*, 550 U.S. at 556)). A claim is plausible when the facts pleaded allow the court to make reasonable inferences that the defendant is liable for wrongful conduct. (*Id.*). However, a court "is not required to indulge unwarranted inferences." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). This liberal pleading standard applies to a plaintiff's factual allegations but not to his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Moreover, a liberal construction of the complaint may not supply essential elements of a claim not pleaded by the plaintiff. *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted). The mere possibility of misconduct and facts merely consistent with liability is insufficient to state a cognizable claim. *Iqbal*, 556 U.S. at 678; *Moss v. U.S. Secret Serv.*, 572

F.3d 962, 969 (9th Cir. 2009). Vague and conclusory allegations of official misconduct are insufficient to withstand a motion to dismiss. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B. Linkage and Causation**

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373–75 (1976). The Ninth Circuit has held that a government actor may be liable under section 1983, if he performs an affirmative act, participates in another's affirmative acts, or fails to perform an act which he is legally required to do that causes the prisoner to suffer a deprivation of rights. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citing *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976)). In addition to direct participation, a government actor may be liable for "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson*, 588 F.2d at 743).

**C. Supervisory Liability**

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676–77; *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisory liability may be based on inaction in the training and supervision of subordinates. *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey*, 673 F.2d at 268.

# I. DISCUSSION

## A. Plaintiff's Allegations[1]

In Claim I, brought pursuant to his rights to equal protection and due process under the Fourteenth Amendment involving the threat to safety, Plaintiff alleges that on October 16, 2023, KVSP had actual knowledge that a substantial risk of serious harm existed and yet failed to respond reasonably. (Doc. 1 at 3). While Plaintiff was working his inmate assignment as a building porter, he was attacked by inmate Woods and sustained injuries as a result. Inmate Woods was known to have a propensity for violence and had recently stabbed his cellmate named "Fitc" (sic) before attacking Plaintiff. Plaintiff asserts Woods "should have been placed in restricted housing but instead custody brought [him] back to regular housing where [Plaintiff] was attacked." Plaintiff thereafter received a write-up for mutual combat though he was the victim. Plaintiff asserts the inactions of KVSP and its custodians in failing to separate Woods led to Plaintiff being attacked and sustaining injuries. Plaintiff asserts he exhausted his administrative remedies as to this claim. (*See id.*).

In Claim II, his Eighth Amendment deliberate indifference claim, Plaintiff alleges that KVSP failed to protect him from the unnecessary attack by remaining deliberately indifferent for a prolonged period of time that led to serious harm. Defendants gave Woods the opportunity to attack again instead of making the reasonable choice to isolate him. Plaintiff alleges this is the "norm" at KVSP where Defendants' choice to remain deliberately indifferent leads to assaults. Plaintiff asserts he has the right to be free from such intrusions that are intentionally situated to give other inmates the opportunity to attack on purpose. Plaintiff alleges he was being inadvertently punished by receiving a write-up though he was found not guilty. Plaintiff alleges the carelessness and malfeasance by the Defendant institution is so abundant that he was attacked and sustained physical injuries to his ear. Plaintiff asserts he exhausted his administrative remedies on this claim. (*Id.*).

Plaintiff alleges in his grievance form that inmate Woods' attack furthered Plaintiff's

[1] The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

preexisting injuries sustained to his back on July 8, 2023, which was caused by the prison staff's neglect. Plaintiff alleges Woods' attack was witnessed by inmate Fitc, who was the cellmate Woods previously stabbed. (*Id.* at 6). Plaintiff spoke on this situation which led to him "ASU on trump up charges" for which he seeks compensation for emotional distress. Plaintiff seeks $300,000 and alleges that medical papers will show the attack that was overlooked by prison staff twice and resulted in his injuries he now has to live with "a scare and back pain." (*Id.*). Plaintiff requests the Court provide both "declaratory and injunctive relief, preliminarily and permanently as reparation" and monetary compensation in the amount of $300,000 for his physical injury sustained. (*Id.* at 16).

**B. Official vs. Individual Capacity Claims**

Plaintiff sues Defendants KVSP and Warden Pfieffer in their official capacities. (Doc. 1 at 1). As relief, Plaintiff seeks monetary damages and unspecified "declaratory and injunctive relief as reparation." (*Id.* at 16).

The Eleventh Amendment prohibits federal courts from hearing suits brought against a state by its own citizens, as well as by citizens of other states. *See Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991). This prohibition extends to suits against states and state agencies. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); *Taylor*, 880 F.2d at 1045. A state's agency responsible for incarceration and correction of prisoners is a state agency for purposes of the Eleventh Amendment. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam). The State of California has not waived its Eleventh Amendment immunity for federal claims under section 1983. *Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity). Therefore, insofar as Plaintiff attempts to sue KSVP, that state entity is immune from suit.

Eleventh Amendment immunity extends to a state official sued in federal court in his official capacity. To the extent Plaintiff is seeking damages, the Eleventh Amendment bars suits

for money damages in federal court against state officials in their official capacity. *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). However, it does not bar a suit for damages against state officials in their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). Therefore, to the extent Plaintiff attempts to sue Warden Pfieffer in his official capacity for damages, the Warden is immune from suit for damages.

A claim for prospective injunctive relief against a state official in his or her official capacity is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 92 (1989). Moreover, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (citing *Hafer*, 502 U.S. at 25; *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

Here, Plaintiff's request for injunctive relief is unspecified, and alleges only for "reparation." Therefore, as pleaded, the complaint does not contain any claims that could be the basis for injunctive relief against Warden Pfeiffer in his official capacity nor any other named Defendant. Accordingly, should Plaintiff timely seek to amend the complaint as provided for below, such amended complaint should not plead and seek injunctive relief unless he is able to remedy these identified deficiencies.

**C. Warden Pfieffer**

The complaint contains no allegations against the Warden of KVSP to establish supervisory liability. Plaintiff has failed to allege facts that would support a claim that the Warden was personally involved in the alleged deprivation of constitutional rights; that he knew of the violations but failed to act to prevent them; or promulgated or implemented a policy so deficient that it is a repudiation of constitutional rights and the moving force of the constitutional violation. *See Good v. Cal. State Prison-Solano*, No. 2:21-cv-01653-TLN-JDP (PC)m 2022 WL 929820, at *1 (E.D. Cal. Mar. 29, 2022) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor*, 880 F.2d at 1045. The complaint fails to state a claim against

the Warden, and he must be dismissed as a defendant. To the extent Plaintiff can cure these identified deficiencies, he will be granted leave to amend as provided for below.

**D. Fourteenth Amendment Equal Protection**

The Fourteenth Amendment provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann*, 707 F.3d at 1123. There are two different ways in which a plaintiff may state an equal protection claim. A plaintiff's first option is to allege "facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." (*Id*. (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005))). Where state action does not implicate a fundamental right or a suspect classification, the plaintiff can establish an equal protection "class of one" claim by demonstrating that the state actor (1) intentionally (2) treated him differently than other similarly situated persons, (3) without a rational basis. *Gerhart v. Lake Cnty., Montana*, 637 F.3d 1013, 1022 (9th Cir. 2011) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). A class of one plaintiff must show that the discriminatory treatment "was intentionally directed just at him, as opposed ... to being an accident or a random act." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)..

Plaintiff makes no allegations concerning discrimination against him as a member of a protected class or as a class of one. Therefore, he has failed to state a cognizable equal protection claim.

**E. Fourteenth Amendment Due Process**

The Fourteenth Amendment protects persons from deprivations of life, liberty, or property without due process of law. U.S. Const. amend. XIV. To state a due process claim, the plaintiff must first "establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 480 (1983)).

Protected liberty interests may arise from the Constitution or from state law. *Wilkinson*, 545 U.S. at 221. "A state may create a liberty interest through statutes, prison regulations, and policies." *Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013) (citation omitted). When a protected liberty interest is implicated, the Due Process Clause provides certain procedural guarantees. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). The amount of process or specific procedures required vary by context and the particular interest at stake. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed,'" including housing or classification decisions. *Sandin*, 515 U.S. at 480. "[T]he Due Process Clause [does not] . . . protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits or range of custody." *Meachum v. Fano*, 427 U.S. 215, 225 (1976). Thus, prisoners lack a liberty interest in being housed in a particular facility or unit, unless the state created a protected right "by placing substantive limitations on official discretion." *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983). Moreover, the Due Process Clause does not give prison inmates a liberty interest to remain within the general prison population. *McFarland v. Cassady*, 779 F.2d 1426, 1427-28 (9th Cir.1986).

To establish a liberty interest in remaining free from administrative segregation, a prisoner must show that his placement in segregation resulted in an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010) (applying the "atypical and significant hardship" test contemplated in *Sandin*). Placement in segregation for administrative purposes "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," and thus, generally does not violate a liberty interest protected by the Due Process Clause. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), abrogated in part on other grounds by *Sandin*, 515 U.S. 472.

Where a substantive due process right is triggered by placement in administrative

segregation, certain procedural safeguards must be met. Prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversarial review of the evidence justifying the placement. *See Hewitt*, 459 U.S. at 476. The prisoner must be provided notice of any charges against him and an opportunity to respond. (*See id*. at 477).

Here, Plaintiff has not alleged sufficient facts to indicate his placement in "ASU" (*i.e.*, administrative segregation unit) was atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484; *see Medina v. Morris*, 676 Fed. Appx. 702, 703 (9th Cir. 2017) (dismissal of due process claim based on administrative segregation placement was proper where plaintiff failed to allege facts sufficient to show a due process violation); *Everett v. Black*, 738 Fed. Appx. 537, 538 (9th Cir. 2018) (same). And "[t]ypically, administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). Unlike the plaintiff in *Serrano*, Plaintiff has not alleged facts asserting that, due to "a novel situation" or unusual personal characteristics, his placement in administrative segregation presented an atypical and significant hardship compared to the level of hardship routinely faced by other inmates in the same setting. Rather, Plaintiff simply alleges that he received a write-up for mutual combat, was placed in administrative segregation after he spoke on the situation and was ultimately found not guilty on the charges.

Further, Plaintiff fails to state a claim upon which relief can be granted. Plaintiff's complaint does not state he was denied notice of the write-up or of his ag-seg placement. Further, there are no facts asserted to indicate Plaintiff was not provided the opportunity to respond. The fact that Plaintiff's write-up was ultimately dismissed shows prison officials did not fail to conduct an informal, non-adversarial review of the evidence justifying Plaintiff's ag-seg placement within a reasonable time. Thus, it appears Plaintiff received all the due process protections he was due. Therefore, he fails to state a cognizable due process claim.

**F. Eighth Amendment Failure to Protect**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend VIII. While the nature of imprisonment restricts significant rights, "convicted

prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (citations omitted). The Eighth Amendment protects prisoners from inhumane methods of punishment and conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). "After incarceration, only the 'unnecessary and wanton infliction of pain'. . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Write*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). No matter where prisoners are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).

The Eighth Amendment requires prison officials to protect prisoners from violence at the hands of other prisoners because "being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 833–34 (1970); *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009). A prisoner seeking relief for an Eighth Amendment violation must show that the officials acted with deliberate indifference to the threat of serious harm or injury to an inmate. *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013).

In a failure-to-protect claim, a prisoner must show that a prison official's act or omission (1) was objectively, "sufficiently serious," and (2) the official was subjectively, deliberately indifferent to an inmate's health or safety. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A deprivation is sufficiently serious if the conditions of confinement pose a "substantial risk of serious harm," (*id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993))), and a prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The second prong of this test is subjective and requires the prison official to have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citing *Wilson*, 501 U.S. at 302–04). "Deliberate indifference" entails something more than negligence but less than acts or

omissions intended to cause harm or with knowledge that harm will result. *Id.* at 835 (following *Estelle*, 429 U.S. at 104). To prove deliberate indifference, a plaintiff must show that the official knew of and disregarded an excessive risk to inmate safety. (*Id.* at 837). A prison official need not "believe to a moral certainty" that a prisoner is at risk of harm "before [he] is obligated to take steps to prevent such an assault," but "he must have more than a mere suspicion that an attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (citation omitted). The obviousness of the risk may be sufficient to establish knowledge. *See Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

Even if a prison official should have been aware of the risk but was not, there is no Eighth Amendment violation, no matter how severe the risk. *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (citation omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. In addition, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably." (*Id.* at 844). "[S]peculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to [an inmate's] future health." *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) (citation omitted).

Here, Plaintiff fails to state a claim for failure to protect against Defendants KVSP and Warden Pfieffer because KSVP is an improper defendant, and Plaintiff has not shown Warden Pfieffer is subject to supervisory liability. However, it is conceivable Plaintiff could allege a cognizable claim against one or more individual KVSP staff for their failure to protect him from the violent attack by another inmate provided they knew and were deliberately indifferent to the fact that inmate Woods posed a substantial risk of harm to other inmates given his previous stabbing of his cellmate not long before Woods attacked Plaintiff in slicing off his ear. Although Plaintiff's complaint lacks sufficient allegations, Plaintiff will be afforded an opportunity to amend his claims to the extent he can in good faith remedy these deficiencies against identified KVSP staff.

**G. Declaratory and Injunctive Relief**

Plaintiff has requested "both declaratory and injunctive relief, preliminarily and permanently as reparation." (Doc. 1 at 16). "It is always the duty of a court of equity to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief." *Eccles v. Peoples Bank of Lakewood Village, Cal.*, 333 U.S. 426, 431 (1948). "Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." *Id*. Like other forms of equitable relief, the Court has judicial discretion to grant declaratory judgment, exercised in the public interest. *Johnson v. Torres*, No. 1:22-cv-01457-BAM (PC), 2023 WL 1823605, at *4 (E.D. Cal. Feb. 8, 2023) (citing *Eccles*, 333 U.S. at 431), *F.&R. adopted*, 2022 WL 782342 (E.D. Cal. Mar. 15, 2022). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted).

Here, Plaintiff's requests for equitable relief are not clear as he fails to specify what particular injunctive or declaratory relief he seeks other than "reparation." *See Eccles*, 333 U.S. at 431. Should this case proceed to trial and a verdict is returned in Plaintiff's favor, then Plaintiff will be entitled to damages and that verdict will be a finding that Plaintiff's constitutional rights were violated. *Johnson*, 2023 WL 1823605, at *4; *Eccles*, 333 U.S. at 431. Because such relief is unnecessary in this case, the Court should decline to exercise its discretion to enter declaratory judgment.

**III. CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the complaint fails to state any cognizable claim against Defendants KSVP and Warden Pfieffer. Because he may be able to cure the deficiencies in his pleading, Plaintiff will be granted leave to amend his complaint to cure the identified deficiencies to the extent he is able to do so in good faith. *Lopez v. Smith*, 20 F.3d 1122, 1130 (9th Cir. 2000).

If Plaintiff wishes to file a first amended complaint, any such amended complaint should

be brief (Fed. R. Civ. P. 8(a)) but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights (*Iqbal*, 556 U.S. at 678-79). Although accepted as true, the "[f]actual allegation must be [sufficient] to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (explaining no "buckshot" complaints permitted).

Finally, an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012). If Plaintiff elects to proceed with this action by filing an amended complaint, the Court cannot refer to a prior pleading in order to make an amended complaint complete. *See* E. D. Cal. Local Rule 220. The **amended complaint must be complete in itself without reference to the prior or superseded pleading**. Once the amended complaint is filed, the original pleading no longer serves any function in the case. Thus, in the amended complaint, **Plaintiff must re-plead all elements of his claims, including all relevant facts, even the ones not addressed by this screening order.**

Accordingly, it is hereby ORDERED:

1. The Clerk of the Court shall send Plaintiff a civil rights complaint form; and
2. **Within 21 days** from the date of service of this order, Plaintiff must either:
   a. File a first amended complaint curing the deficiencies identified by the Court in this order; or
   b. In the alternative, if Plaintiff no longer wishes to pursue this action, file a notice of voluntary dismissal. Fed. R. Civ. P. 41(a)(1)(A)(i).

**If Plaintiff fails to comply with this order, the Court will recommend that this action be dismissed, without prejudice, for failure to obey a court order and for failure to prosecute.**

IT IS SO ORDERED.

Dated: **February 19, 2025**

UNITED STATES MAGISTRATE JUDGE